GLADNEY, Judge.
The principal issue presented on this appeal is whether Queen Bradford Turner possessed testamentary capacity when she executed an olographic will on March 20, 1952. Opponents to probation of the will, Wesley and Henry Bradford, have appealed from the judgment dismissing their opposition.
A résumé of the pleadings discloses the origin of the lawsuit.
A petition was filed on May 2, 1961, by Pearlene Garner Masingale alleging that Queen Bradford Turner died on April 17, 1961, that the decedent left certain property, that there were no heirs in the ascending or descending line, and that petitioner as a creditor of the Turner estate desired to be appointed administratrix thereof. In response to this application the petitioner was appointed administratrix and an order was issued directing an inventory be taken. On June 5, 1961, Floyd Turner, Jr. filed a petition to probate the olographic will of *741 the deceased dated March 20, 1952. The will bequeathed all of decedent’s property to him. Turner also filed an opposition to the appointment of Pearlene Garner Mas-ingale as administratrix. Wesley Bradford ¾-nd Henry Bradford, brothers of the deceased, in a petition naming Pearlene Garner Masingale and Floyd Turner, Jr., .as defendants, alleged they were the sole heirs of the deceased and that the will of Queen Bradford Turner was null and void by reason of the mental incapacity of Queen Bradford Turner. It was further charged that Floyd Turner, Jr. used undue influence in securing the execution of the will and that he had wrongfully obtained possession of certain cash money which had belonged to the deceased. Relief was sought declaring the will null and void, recognizing Wesley Bradford and Henry Bradford as the sole heirs of the decedent, and seeking judgment against Floyd Turner, Jr. for the money belonging to the estate. Following a trial upon the issues so presented, judgment was rendered recognizing the validity of the will, rejecting the demands of the Bradfords and of Pearlene Garner Masin-gale and also nullifying the latter’s appointment as administratrix of the succession. Floyd Turner, Jr., was recognized as the sole legatee of the deceased and placed in possession of the estate. From the judgment so rendered Wesley and Henry Bradford have perfected an appeal. Pearlene Garner Masingale failed to perfect an appeal and, therefore, her claims are not before this court.
A determination of this case turns upon whether or not Queen Bradford Turner possessed testamentary capacity when she executed an olographic will on March 20, 1952. The trial court properly observed that “the fact that Queen Bradford Turner executed the will on March 20, 1952, and entered the North Louisiana Sanitarium on March 25, 1952 and Central Louisiana State Hospital on April 11, 1952, where she remained until June 8, 1952, and her condition was diagnosed as ‘Senile Psychosis, Simple Deterioration’, raises a serious question as to her sanity at the time the will was written”. Testimony was given by a large number of witnesses bearing upon the mental capacity of the decedent as of the time the will was written. A thorough examination and evaluation of this testimony is disclosed by the written opinion of the able trial judge who concluded Queen Bradford Turner did possess the requisite testamentary capacity to write the will in question and that it was valid and enforceable. His opinion strongly relied upon the testimony of the deceased’s personal physician, Dr. A. A. Herold, Sr. and that of Alton M. Richmond, an attorney who rendered professional services at the time the will was written.
The general principles relating to testamentary capacity are well established in our jurisprudence. Such capacity is tested as of the time of making the will. Cormier v. Myers, 223 La. 259, 65 So.2d 345 (1953); Succession of Vicknair, La.App., 126 So.2d 680 (4th Cir.1961), and is always presumed until the contrary is affirmatively established by satisfactory and convincing evidence. LSA-C.C. Art. 1475. Succession of Bradford, La.App., 130 So.2d 702 (2d Cir.1961). Sufficient evidence of capacity is to be determined from the ability of a testator to know what he is doing, what he has, and what he wants to do with it. Rostrup v. Succession of Spicer, 183 La. 1087, 165 So. 307 (1936); Succession of Herson, La.App., 127 So.2d 61 (1st Cir.1961). In the last cited case the following comment appears:
“Testamentary capacity is a question of fact and more specifically the presence of such requisite condition at the precise time of making the will, the issue being one which must be decided in the light of the attending circumstances in each individual case. In reaching a conclusion on such issue courts will consider the physical and mental condition of testator not only at the time of making the will but also prior and subsequent thereto since the *742 actions, conduct and physical and mental condition of testator before and after, as well as at the time of making the will, are of probative value in determining testamentary capacity.”
Where the will is olographic in form the will itself may be sufficient to refute a charge of incapacity. Thus, it was said in Kingsbury v. Whitaker, 32 La.Ann. 1055 (1880):
“ * * * Sanity, or soundness of mind, being the natural condition of man, insanity is never to be presumed, but must be affirmatively and contradictorily established. This rule, which is founded on reason and common sense, is sanctioned by the jurisprudence of England, France and of our own country, and has been consecrated by the most distinguished authors on this subject. This wholesome rule has a peculiar application in a case like this, when the will, written by the testator himself, presents a series of wise and judicious dispositions, contains no contradictions, no extravagance, not a sentence, not a word indicating that it was the offspring of a ‘mind diseased’, and it throws upon the heirs attacking the will the burden of proof of the unsoundness of mind of the testator at the date of the testament. * * * ”
The will of Queen Bradford Turner was short and simple and was copied by the testatrix. Nevertheless the handwriting was good and exhibits no irregularities or evidence of physical or mental weakness. It was prepared under the supervision of Alton M. Richmond, a reputable member of the Shreveport Bar, who had had considerable experience dealing with many people in varying mental conditions, and who testified as to the mental condition and testamentary capacity of the testatrix at the time the will was written. He gave the following testimony:
“Her mental capacity was perfect at the time. If .it had not been so, I would not have made a will. I for one minute did not think that anything could be wrong with her mental capacity. There was no question in my mind that she was fully capable of making a will.”
Others present at the time the will was made were Nathaniel Yeatch, an employee of the Police Department of the City of Shreveport, and Josephine Ross, a personal friend of Queen Bradford Turner, who had been closely associated with her since 1911. Both of these parties testified that they observed nothing wrong with her mind. Floyd Turner, Jr., was not present on this occasion, and consequently the evidence fails to substantiate the charge of undue influence. At least seven others testified the mental condition of the deceased was sound before the will was made. Dr. A. A. Herold, Sr., a reputable physician and surgeon of Shreveport, a former coroner of Caddo Parish and with an experience of fifty-five years in the practice of his profession, testified that he was the personal physician of Queen Bradford Turner at the time she was a patient at the North Louisiana Sanitarium from March 25, 1952, until she. was discharged from that institution on April 22, 1952, during which time she was under his care and treatment. He said her presence in the hospital was occasioned by the fact that she was nervous and restless, but he thought there was nothing wrong with her mental condition. In answer to a hypothetical question, he testified:
“I would say that I don’t know why she couldn’t have made a will if she was able to write and sign her name; March the twentieth, you say ?”
The deceased was committed to Central Louisiana State Hospital on April 11, 1952, about three weeks after she had made her will. The official commitment application shows the following complaint and cause for the commitment:
“Patient is forgetful of most recent events; worries a great deal; talks to herself; does not sleep very well *743 and will not eat much unless she is coaxed to do so. Wanders around the house all night and wants to come to town, says she has business to attend to. Talks incessantly. Son has work and he is afraid to leave her as she wants to get out of the house and leave. She does not recognize her own clothing but tells her son they belong to someone else and she wants her own clothing.”
The instrument fails to indicate any prior periods of mental illness. After admission to Central Louisiana State Hospital, testatrix’s condition on May 2, 1952, was diagnosed as “Senile Psychosis-Simple Deterioration”. Queen Bradford Turner was released from the hospital on June 8, 1952, thirty-six days later. The fact that she was released after such a short period seems to indicate a temporary condition. There appears in the record a letter from the Superintendent of Central Louisiana State Hospital, Dr. Arthur L. Seale, who had reviewed the records of the institution pertaining to the case of Queen Bradford Turner. The letter contains the following statement by Dr. Seale:
“As her will was made on March 20, 1952, twenty-two days prior to her admission here, and the psychiatrist who attended her while she was a patient in this hospital has expired, we are not in position to make definite statements concerning her competency at this time.”
The opponents to the will, in addition to relying upon the fact that Queen Bradford Turner was a patient in North Louisiana Sanitarium from March 25, 1952 until April 2, 1952, and in Central Louisi-ant State Hospital from April 11, 1952 until June 8, 1952, presented testimony of some seven witnesses bearing on the mental condition of Queen Bradford Turner. After examining carefully this testimony we have concluded the evidence is insufficient to establish the incapacity of the testatrix. We are in accord with the finding of the judge a quo that the testimony and evidence considered in its entirety show that. Queen Bradford Turner had the mental ability to make a will on March 20, 1952.
For tire reasons hereinabove set forth, the judgment from which appealed is affirmed at appellants’ cost.