365 So.2d 929 (1978)
SUCCESSION of Lloyd A. MONTERO, Sr.
No. 9631.
Court of Appeal of Louisiana, Fourth Circuit.
December 7, 1978.
Rehearing Denied January 16, 1979.
*930 Legier, McEnerny, Waguespack, Kuhner, Scoggin & Strong, William J. Waguespack, III, New Orleans, for Mrs. Jeanne S. Sciortino, appellee.
Charles J. Lange, A. S. Cain, Jr., New Orleans, for Lloyd A. Montero, Jr., and Ronald J. Montero, appellants.
Before STOULIG, BOUTALL and BEER, JJ.
STOULIG, Judge.
This appeal concerns the validity of an olographic will executed by Lloyd Montero, Sr., which reads:
 "5/29/74
To Lloyd & Ronnie
In the event I do not come out of this surgery O.K. I want you & Lloyd and Jeanne to divide everything up between the three of you.
This would be my last wish and I would hope that it would be carried out.
 Love
 Lloyd, Sr."
The proponent of this will is Jeanne Sciortino, decedent's fiancee at the time of his death, and the opponentsappellants in this courtare the testator's sons, Lloyd Montero, Jr., and Ronald Montero. The alternative to probate in this instance is intestacy.
The will is valid as to form. Although numeral dating has been declared by our jurisprudence to be insufficient as to form in an olographic will, extrinsic evidence may be resorted to for determining with certainty the date on which the will was written. (Succession of Boyd, 306 So.2d 687 [La.1975]).[1] In this case, the fact that it was written May 29, 1974 while the testator was awaiting a surgical procedure is beyond dispute.
Appellants base their challenge on two assertions: (1) the testator lacked testamentary capacity at the time he executed the will; and (2) the will would have become effective only in the event the testator did not survive the surgical procedure.
The record establishes the capacity of the decedent to execute a will at the *931 time this document was written. Dr. Frank Schmidt, a cardiovascular surgeon, visited Lloyd Montero, Sr., in his hospital room at Baptist Hospital, at 7:30 p. m. on May 29, to discuss the upcoming surgery (the placing of a shunt in his arm so that his blood could be dialyzed through the kidney machine and returned purified to his body). Dr. Schmidt testified the patient was fully lucid when he signed the consent slip for the surgery.
Dr. Maurice Pearl, the internal medicine and nephralgic specialist who admitted the elder Montero to the hospital, found him lethargic, a condition prevalent in patients suffering the kidney problem the testator had. However though Dr. Pearl used the term mentally impaired a fair interpretation of his testimony requires us to negate the hypothesis that decedent was not lucid when he executed his will. Testamentary capacity is always presumed until convincing proof is presented to rebut this presumption. Succession of Dixon, 269 So.2d 323 (La.App. 2d Cir. 1972); and Succession of Turner, 157 So.2d 740 (La.App. 2d Cir. 1963). We hold the opponents have failed to establish their allegation of testamentary incapacity.
As to the second assertion that the will became operative only "in the event I do not come out of this surgery O.K. * * *," we point out this interpretation contravenes C.C. art. 1712, et seq. First the court must look to the document to ascertain the intent of the testator (C.C. art. 1712) and interpret a disposition in the sense that will give it effect (C.C. art. 1713). Applying these articles, we interpret the quoted phrase to mean "in the event of my death * * *" I leave Jeanne and my sons my property to divide up "between the three of you." Obviously the testator wished to name his fiancee as an heir, otherwise why write a will at all? Decedent had the opportunity to write another will after his discharge from the hospital on June 8 until his death on August 27 had he desired to do so. We conclude that the duration of his survival after implant of the shunt is of no moment.
For the reasons assigned, the judgment appealed from is affirmed. Appellants are to bear all costs of this appeal.
AFFIRMED.
NOTES
[1] In Succession of Lefort, 71 So. 215 (La.1916), the Court reasoned there is "a physical difference between a document without a date and one with an uncertain date" and it approved the use of extraneous evidence to remove the uncertainty or ambiguity. See also Succession of Gaudin, 98 So.2d 711 (La.App. 1st Cir. 1958).