459 So.2d 158 (1984)
Della Mae Warren HOLCOMB and Gladys Jean Holcomb McAllister, Plaintiffs-Appellants,
v.
Catherine Sue Hickingbottom BAKER and Carolyn Hickingbottom Crumpton, Defendants-Appellees.
No. 16599-CA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1984.
Writ Denied December 14, 1984.
*159 Kidd & Kidd by Paul Henry Kidd, Jr., Monroe, for plaintiffs-appellants.
Theus, Grisham, Davis & Leigh by Paul D. Spillers, Monroe, for defendants-appellees.
Before HALL, MARVIN and FRED W. JONES, Jr., JJ.
FRED W. JONES, Jr., Judge.
This case involved an attempt to set aside an inter vivos donation of immovable property made by Arthur C. Holcomb, now deceased, to Catherine Baker and Carolyn Crumpton, his two stepdaughters. The plaintiffs in the action are decedent's mother, Delia Holcomb, and sister, Gladys Holcomb McAllister. The trial judge refused to annul the donation and assigned written reasons.
The plaintiffs' appeal is based on four principles of law: (1) lack of donative capacity, (2) impingement on the legitime of decedent's mother, (3) donation omnium bonorum, and (4) a creditor's rights on a gift donated by a debtor. We affirm the trial judge's findings of capacity to donate and insufficient proof of donation omnium bonorum. We remand for inventory of the estate and figuring of the active mass in order that the legitime of Delia Holcomb and any creditor's rights she may have can be properly assessed in light of the law herein discussed. Gladys McAllister is dismissed from the suit as having no right of action to the remaining claims.

FACTS
The donor in this case was undisputedly an alcoholic. In 1972, he had surgery to save him from advanced cirrhosis of the liver. For approximately three years after the operation he did not drink. During that time he married Nannie Lee Fleming Hickingbottom and moved to some farmland in Jones, Louisiana. His wife had two daughters by a former marriage. The younger daughter lived with them throughout her high school years and the older daughter frequently visited. As time went on, the farm sank deeper and deeper into debt. The donor returned to drinking. As his drinking increased, so did his physical ailments. As a result of his drinking, he was hospitalized from May 1, 1981 to June 3, 1981; from June 13, 1981 to June 28, 1981; and finally, on July 3, 1981. He died on July 4, 1981.
On April 7, 1981, the donor and his wife visited the office of Don Carroll, attorney-at-law, in Oak Grove, Louisiana. There the donor executed the inter vivos donation of his interest in the farm to his two stepdaughters. It is this donation that the heirs of the donor attack.

DONATIVE CAPACITY
All persons are presumed capable of donating their property whether by donation inter vivos or mortis causa. Louisiana Civil Code Article 1470 (1870). This *160 presumption of capacity puts the burden of proving lack of capacity on the party attacking the donation. Succession of Kilpatrick, 422 So.2d 464 (La.App. 2d Cir.1982), writs denied 429 So.2d 126. Proof of lack of capacity should overcome the presumption of capacity by clear and convincing evidence. Succession of Lyons, 452 So.2d 1161 (La.1984). It is sufficient that the capacity to donate exists at the moment the donation is made. La.C.C. Art. 1472. In sum, the party alleging incapacity has the burden of proving by clear and convincing evidence that the donor was incapable of donating at the moment of the donation.
In this case, the capacity alleged to be lacking is the soundness of mind requirement of Civil Code Article 1475. Sufficient soundness of mind can be determined from a showing that the donor knows what he is doing, knows what he has, and knows what he wants to do with it. Succession of Turner, 157 So.2d 740 (La.App. 2d Cir.1963). The question of capacity is a question of fact, and the trial judge's determination will not be disturbed unless clearly erroneous. Succession of Kilpatrick, supra.
The trial judge correctly put great weight on the "lay testimony" in this case. The experts who testified did not see the donor until almost a month after the act of donation. Their testimony was primarily speculating whether or not the donor's condition on May 1 necessitated the conclusion that the donor was mentally incapable on the April 7th immediately preceding. The lay testimony consisted of individuals who saw him on April 7th. The trial judge said:
In determining decedent's mental capacity the Court also has the benefit of observations of several credible lay witnesses. Mr. Donald Carroll prepared the Act of Donation and Mr. Holcomb executed it before him on April 7, 1981. Although Mr. Holcomb was physically unable to sign the instrument, Mr. Carroll testified he clearly understood what he was doing. Mrs. Lee Holcomb was present when her husband signed the donation. She testified that he was mentally competent and was doing something he had a desire to do for several years. Mr. Charlie Fleming testified that he saw decedent several hours after the donation and Mr. Holcomb said: "I've done something I wanted to do for a long time." He said Mr. Holcomb was not intoxicated and understood what he had done. Other lay witnesses corroborated the competent mental state of Mr. Holcomb during this relevant period. The Court must conclude in view of the persuasive lay testimony that Mr. Holcomb was not mentally incompetent at the time he donated the property to defendants.
Appellants did not prove the incapacity of the donor by a preponderance of the evidence or by clear and convincing evidence. The trial judge did not err on this issue.

DONATION OMNIUM BONORUM
Appellants also urge that the trial judge erred when he refused to find the donation null under Civil Code Art. 1497 as a donation omnium bonorum (i.e., a donation of all his property). We note in passing that this cause of action was originally written into the Civil Code to protect the donor and consequently is most reasonably construed as a personal right that is not heritable. While this approach would pretermit a discussion of the merits of this claim since the heirs would have no right of action, we feel obliged to decide on the merits since the conflicting jurisprudence has often characterized the donation omnium bonorum as a nullity ab initio (i.e., an absolute nullity) which would allow the heirs to assert the nullity.
Plaintiff has the burden of proving that the donation divested the donor of all of his property and that the donor did not reserve enough for his subsistence. C.C. Art. 1497 (1870). In this case, the donor divested himself of all his interest in his immovable property, but retained all of his personal belongings. Furthermore, the donor received monthly social security and veterans benefits totaling $477.33. No evidence *161 was introduced relating to the donor's living expenses nor was evidence presented showing that the donor could not meet his needs. Under these circumstances we find this case indistinguishable from Ellis v. Benedict, 408 So.2d 987 (La.App. 2d Cir.1981). We therefore affirm the trial judge on his holding that there was not a donation omnium bonorum.

IMPINGEMENT ON LEGITIME
The donor's mother complains that the donation prevented her from receiving her legitime under the law applicable at the donor's death. On July 4, 1981, Civil Code Articles 911 and 1494 (now both repealed) were still in effect. Article 1494 (Acts 1956, No. 313, § 1) provided:
Donations inter vivos or mortis causa can not exceed two-thirds of the property, if the disposer, having no children, leaves a father, mother, or both, provided that where the legal portion of the surviving father, mother, or both is less than one-third the forced portion shall not be increased to one-third but shall remain at the legal portion.
Article 911 (1870) provided:
If a person dies, leaving no descendants, and his father and mother survive, his brothers and sisters, or their descendants, only inherit half of his succession.
If the father or the mother only survive, the brothers and sisters, or their descendants, inherit three-fourths of his succession.
The two articles read together provide that the donor's mother would be entitled to a forced portion of one-fourth. She therefore would be able to force a reduction of any donations to the extent of the value of her legitime. C.C. Article 1502.
However, in order to determine the value of the legitime it is necessary to first calculate the active mass under C.C. Article 1505. The record does not provide this court with adequate evidence to compute the active mass; therefore we must remand.

CREDITORS' RIGHTS
The appellants cite C.C. Articles 1552 and 1553 claiming they give a creditor the right to look to a "universal donee" for the debts of the donor. In this case, Delia Holcomb has a judgment against the unopened succession of the donor for debts prior to the donation. There is one case defining a "universal donee," Porche v. Moore, 14 La.Ann. 241 (1859). This case states that the distinction between universal and particular legacies is not analogous to a universal donation. In Porche, it was held that the donation of land and slaves which constituted the whole of the donor's property, with reservation of an annuity to himself, was not a donation omnium bonorum but was a universal donation. It was found that the donor had reserved scarcely enough property for his subsistence. We find Porche to be applicable in this case and remand to the trial court to determine if the donor reserved an insignificant amount of property above subsistence; if so, C.C. Articles 1552 and 1553 should be applied.
We therefore affirm the judgment rejecting plaintiffs' demands based on incapacity of the donor and on the donation being a donation omnium bonorum. Otherwise, we reverse and remand to the trial court for a determination of the active mass and legitime in accordance with Succession of Gomez, 226 La. 1092, 78 So.2d 411 (1955), and the applicability of Articles 1552 and 1553. We also render judgment rejecting all claims of Gladys McAllister. The costs of appeal are to be divided equally between appellants and appellees.