DOMENGEAUX, Judge.
Lizzie F. Andrus commenced these proceedings to revoke a donation inter vivos of her only immovable property, her home. The donation, executed in authentic form on February 22, 1986, conveyed Andrus’ home in the Town of Mamou, Louisiana, to her niece and God-child, Loyce C. Fontenot, and her nephew by marriage, Evabe Fonte-not. The Fontenots are the named defendants in this suit.
Andrus sought revocation of the donation on the grounds that she lacked the requisite mental capacity and on the alleged ingratitude of the donees. La.Civ. Code arts. 1475 and 1559 (1870). The plaintiff suggested at trial that the donation might qualify for revocation or dissolution as a donation omnium bonorum, a donation of the donor’s entire patrimony, but the defendants objected on the grounds that it would have been an impermissible expansion of the pleadings. La.Civ.Code art. 1497 (1870) (amended 1982 and 1985); Norvell v. Aiavolasiti, 33 So.2d 434 (La.App.Orl.1948).
The Trial Court rendered judgment in favor of Andrus, revoking the donation. The Trial Judge in his “Reasons For Judgment” very briefly addressed the issues of the ingratitude of the donees and donation omnium bonorum, but rested his decision on the grounds that Andrus lacked the capacity to execute a donation at the time this donation was made. It is from this decision that the Fontenots appeal.
La.Civ.Code art. 1470 (1870) provides, “All persons may dispose or receive by donation inter vivos or mortis causa, except such as the law expressly declares incapable.” The presumption created by article 1470, as it relates to the instant case, is that donors are presumed capable of donating and the party challenging a donor’s capacity must bear the burden of establishing the donor’s lack of capacity. Perot v. Arnold, 234 La. 68, 99 So.2d 26 *308 (La.1958); Succession of Mithoff, 168 La. 624, 122 So. 886 (1929); Holcomb v. Baker, 459 So.2d 158 (La.App. 2nd Cir.1984), writ denied, 462 So.2d 196 (La.1984); Succession of Kilpatrick, 422 So.2d 464 (La.App. 2nd Cir.1982), writ denied, 429 So.2d 126 (La.1983). Absent clear and convincing evidence that the donor lacked the capacity to donate, the donation must be upheld. Succession of Lyons, 452 So.2d 1161 (La.1984).
The requisite mental capacity to legally effectuate one’s donative intent is set forth in article 1475. Article 1475 provides that a donor merely “be of sound mind.” supra. The Code further provides that although a donor may lack the mental capacity either before or after the donation is executed, “It is sufficient if the capacity of giving exist[ed] at the moment the donation [was] made.” La.Civ.Code art. 1472 (1870).
The issue of a donor’s mental capacity is a question of fact entitling the decision of the trier of fact to great weight. Resolution of the issue may be obtained by demonstrating that the donor knew what she was doing, knew what she had and knew what she wanted to do with it. Succession of Turner, 157 So.2d 740 (La.App. 2nd Cir.1963). Absent a finding that the decision of the Trial Judge was manifestly erroneous, i.e., that the plaintiff failed to prove by clear and convincing evidence that she was not of sound mind, the judgment of the District Court should be upheld. Virgil v. American Guarantee and Liability Insurance Company, 507 So.2d 825 (La.1987); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Holcomb, supra; Kilpatrick, supra.
It is interesting to note, prior to concluding our discussion of the relevant law, that the parties in this case are the donor and the donees. Our research reveals that the plaintiffs in most suits seeking the revocation or dissolution of a donation on the grounds of mental incapacity are not the donors, but rather, the heirs or legatees of donors, the parties who generally benefit by the revocation of a donation. We were, in fact, unable to discover any similar suits which arose prior to a donor’s death.
We raise this point because of the stringent jurisprudential burden of proof, that of clear and convincing evidence, placed on the party attempting to establish a donor’s lack of capacity. Unlike cases involving deceased donors, in which the obligation of the judiciary should be to uphold the donor’s intention absent very strong evidence rebutting the presumption of capacity, we question the propriety of applying such a stringent standard in suits of the instant denomination in which the donor is both the plaintiff and of sound mind. Donors in this situation have the opportunity to plead their own cases, obviating, in our opinion, the necessity for the clear and convincing evidence standard of proof.
We reference by analogy La.Civ.Code art. 209 (1870) (amended 1980, 1981, 1982 and 1984) and the different burdens of proof which must be met in order to establish filiation to an alleged living parent and an alleged deceased parent. Proof of filiation to an alleged living parent need only be established by a preponderance of the evidence, whereas, proof of filiation to an alleged parent who is deceased must be established by clear and convincing evidence.
We raise this question purely as a matter of academic inquiry. Although we believe the question of the appropriate standard of proof is open for discussion, the resolution of this issue has not been necessitated by this suit. We, therefore, render no decision on the issue. We merely elected to express our thoughts on the subject.
Lizzie Andrus was seventy-six-years-old at the time she made the donation in question. She testified that she had very poor hearing, that her memory often failed her and that she was a very nervous person. She told the Court that she lacked the ability to read and write and that she required the assistance of others to transact business, such as buying the property in question, banking and paying her bills.
Andrus was married to Henry Andrus, her husband of approximately fifteen years, at the time she executed this donation. The evidence indicates that Henry Andrus was approximately eighty-four- *309 years-old and that he was not in good health. Mr. Andrus was described by his wife as a nervous person who had a pacemaker. It should be noted that although the plaintiff was married at the time in question, the property was her separate property, a fact established by Henry An-drus in the act of sale by which the plaintiff acquired the property.
When Andrus executed the donation in late February, 1986, the evidence reflects that she had been home for nine days from a nine-day stay in the hospital. The trial record did not disclose the reason for her hospital stay, but what could be gleened from the testimony suggests that it was not life-threatening, but was serious.
The evidence also establishes that Henry Andrus was not living with his wife at the time, having returned to his home place in St. Landry Parish. According to Henry Andrus, whose testimony was received by way of deposition because he was in a nursing home and too ill to testify in person, he was in poor health and was extremely tired because he had spent a considerable amount of time at the hospital during his wife’s stay. He testified that the plaintiff failed to remember that he had ever been to the hospital, a fact substantiated by Loyce Fontenot, the defendant, which resulted in his wife becoming difficult for him to handle after her discharge. Henry Andrus stated that he stayed with his wife for two days after she was released from the hospital, but on the second or third morning she refused to eat and he was prompted to call Loyce Fontenot to care for her aunt.
The plaintiff testified that she first became aware of the donation approximately nine months after the act had been passed. She told the Court that her neighbors had received their city tax notices and although she had not received her notice she went to pay the taxes. Subsequent to returning from paying the taxes, Henry Andrus saw the tax receipt and told her that the receipt was in the name of the defendants. Henry Andrus stated that her reaction was one of great surprise.
When questioned about the act of donation, Andrus stated that she had no recollection despite the fact that it involved a trip to an attorney’s office and the signing of the act. The testimony of Loyce Fonte-not lends support to the testimony of An-drus. The defendant stated that when her aunt “found out” about the donation, she was mad.
Testifying on behalf of the plaintiff, in addition to Henry Andrus, was: (1) Inez Fusilier Deshotel, a half-sister; (2) Ernest Fusilier, a half-brother; (3) Donna S. Sei-ley, a first cousin; and (4) Lou Marcantel, whose mother is a cousin of the plaintiff. None of the plaintiff’s witnesses, with the possible exception of Henry Andrus, stood to inherit whether the plaintiff died testate or intestate, suggesting that they had no financial stake in the outcome.
Andrus’ witnesses all testified similar to one another. They testified that in recent years, since 1983 or 1984 when Andrus moved to Mamou, her mental state has been deteriorating. The testimony indicated that the plaintiff was forgetful or absentminded, would often repeat herself, had poor hearing and was often confused. Specific instances of Andrus’ forgetfulness, such as placing eggs in a kitchen cabinet and forgetting to cook breakfast, were cited.
Loyce Fontenot and Evabe Fontenot testifying on their own behalf stated that they believed Andrus was of sound mind when she donated the property to them. The Fontenots, in contradiction to the testimony of Andrus’ witnesses, told the Court that the plaintiff’s memory was good and that although she did repeat herself, she did not do it often. Loyce Fontenot testified that her aunt made the donation because she and Evabe had been of considerable help to her and because Andrus did not desire any of her property to go to Henry Andrus’ side of the family.
Loyce Fontenot did state, however, that while the plaintiff was in the hospital there were occasions when she was irrational. She attributed this behavior to the fact that Andrus was in her mid-seventies and on medication. It should be noted at this *310 point that prior to the donation Andrus’ will had named Loyce and Evabe Fontenot as recipients of seventy-five percent of her estate, tending to rebut any suggestion that the Fontenots might have been motivated by greed to manipulate the elderly donor.
Jake Fontenot, the attorney and notary who executed the donation, testified that Andrus appeared to be in good health and to have the requisite capacity on the day in question. He told the Court that Andrus did not appear to be confused or disoriented and that she did not give any unresponsive answers. Jake Fontenot was of the opinion that Andrus was a happy person and he further stated that nothing concerning her mental capacity sent up any “red flags” alerting him that she might not be of sound mind.
The attorney did, however, testify that most of his conversations with Andrus on the day in question were general and light. He testified that he did not probe deeply into her capacity because the donor and one of the donees were in the room together and he was concerned about creating an awkward situation. Considering Fonte-not’s initial impression of Andrus and her age, it is understandable that he might choose to forgo an indepth inquiry into her capacity.
Avia Fusilier, Loyce Fontenot’s mother, and Vickie Fontenot, Jake Fontenot’s legal secretary, also testified on behalf of the defendants. The testimony of these witnesses did not prove to be highly beneficial. Avia Fusilier essentially testified that An-drus intended to make the donation and suggested that Andrus was in good enough health, both physically and mentally, to do so. Vickie Fontenot testified that she witnessed the act of donation, but that her contact with the plaintiff was very limited.
Based upon the above facts, we believe that the position of the plaintiff-donor, An-drus, considerably outweighs that of the defendant-donees, Loyce and Evabe Fonte-not. We are of the opinion that the Trial Judge committed no error when he concluded that Andrus had proven her lack of mental capacity at the time of the donation by clear and convincing evidence. The decision of the Trial Court will, therefore, be affirmed.
For the above and foregoing reasons the judgment of the District Court in favor of Lizzie F. Andrus is affirmed.
All costs of this appeal are assessed against Loyce C. Fontenot and Evabe Fon-tenot.
AFFIRMED.