PLOTKIN, Judge.
Defendant Charles Bernard Fanz Jr. appeals a trial court judgment nullifying a sale of immovable property from his mother to him as a donation omnium bonorum subject to collation and requiring him to pay to his sisters $37,465.60 as their share of the rent collected on the property, as well as $43,390, the amount of a mortgage placed on the property by the defendant, subject to a credit of $10,000 for extraordinary improvements and maintenance on the property. We affirm.

Facts

The property which is the subject of this action is located at 2420 and 2420½ Victor Street in the Parish of St. Bernard. The Victor Street property was originally acquired by the parents of the parties to this action, Charles Bernard Fanz Sr. and Stella Fortuna Fanz. However, following the death of Charles Fanz Sr., a judgment of possession placed Mrs. Fanz in possession of an undivided one-half interest in the property, while placing her five children in possession of the other undivided one-half interest. Each of those children, defendant Charles Fanz Jr. and his four sisters, thus received an undivided one-tenth interest in the property.
Then, on January 24, 1980, Mrs. Fanz entered into a sales agreement with Charles Fanz Jr. to sell her undivided one-half interest in the property to her son for $15,000, *717 $4,850 to be paid at the time the act of sale was passed, and $10,650 to be paid at the rate of $500 per month until paid, subject to interest of 10 percent per annum. The record in this ease contains two checks by which Charles Fanz Jr. purportedly paid for the property — a $4,350 check dated January 24, 1980, and a $10,650 check dated February 21, 1980. The record also contains a promissory note for the $10,650 which was marked “Paid in Full” by some unidentified person and was signed by Mrs. Fanz. Charles Fanz Jr. claims that he took his mother to the bank on February 21, 1980 and that he saw her cash the $10,650 check and receive cash in that amount. Afterwards, he said, he handed his mother over to one of his sisters.
His sisters, who are the plaintiffs in this collation action, claim that their mother was simply found later that night, February 21, 1989, in a car belonging to Charles Fanz Jr.’s business partner outside the residence of one of the sisters; they claim their mother was incoherent at the time she was found. The sisters claim that their mother never had any large sums of money after the purported sales transactions and that she did not have any bank accounts. Furthermore, the sisters presented evidence showing that Charles Fanz Jr. made a deposit for $4,350 on the day after he wrote the first check to his mother and that he made a deposit of $10,650 the same day as he wrote the second check to his mother. They claim therefore that the sale of the property was a disguised donation and that no money actually changed hands between Charles Fanz Jr. and his mother.[1]
The plaintiff sisters allege that they took turns taking care of their mother beginning in 1977 and continuing until she was placed in a nursing home shortly after the sale of her property. While they were earing for their mother, one of the sisters would receive and cash her social security check. Further, the sisters claim that Mrs. Fanz had no assets other than her undivided interest in the immovable property, a fact which they seek to prove by testifying that she qualified for admission to a nursing home which required proof that the residents had no assets. Mrs. Fanz died at St. Rita’s Nursing Home on April 15, 1986.
It is undisputed that Charles Fanz Jr. managed and maintained the property beginning in 1980. His income tax records for the years 1980-1988 indicate that he collected a total of $49,862 in rentals during that time period, none of which was given to his mother or his sisters.
On March 22, 1989, Charles Fanz Jr. entered into an agreement with Anthony J. Vesich Jr. to mortgage the property for $43,-390 in consideration of loans and advances previously made by Vesich to Charles Fanz Jr. On October 10,1989, the sisters filed the instant action, seeking collation of the real estate and an accounting of the rent collected. The court issued a judgment on November 15, 1989, allowing one of the sisters, Delores O’Brien, to begin collecting the rents, as administratrix of the succession of Mrs. Fanz.
On July 12, 1990, the plaintiffs, who had learned about the mortgage of the property to Vesich, filed a supplemental and amending petition seeking to recover damage incurred as a result of the mortgage. On August 3, 1990, the succession of Anthony Vesich intervened in these proceedings, seeking a judgment recognizing the mortgage as valid.
After hearing testimony from Charles Fanz Jr. and from Delores O’Brien, the trial judge issued judgment in favor of the plaintiffs and against the defendant, requiring Charles Fanz Jr. to collate the property to his mother’s succession because it was null as a donation omnium bonorum. Additionally, in his reasons for judgment, the trial court *718 held that the sale was null because it was a disguised donation, finding “no sufficient evidence or any factual basis, either material or evidentiary, to support the purported transaction between Stella Fanz and Charles Fanz Jr. for one half interest in the Victor Street property.” The judgment also recognized the Vesich mortgage as valid, and required Charles Fanz Jr. to pay the plaintiffs $37,-465.60 in rental monies, as well as the full amount of the $43,390 mortgage. The award was subject to a $10,000 credit in favor of Charles Fanz Jr. for the extraordinary improvements and maintenance on the Victor Street property.
Charles Fanz Jr. appeals the judgment, claiming the following: (1) that the act of sale was not a disguised donation, (2) that the plaintiffs failed to carry their burden of proving a donation omnium bonorum, and (3) that the plaintiffs are not entitled to the full amount of the mortgage. For the reasons discussed below, we affirm the trial court judgment in all respects.

Disguised donation

Although it is not the appellant’s principal argument on appeal, we will first consider whether the alleged sale of Mrs. Fanz’s undivided one-half interest in the Victor Street property was in fact a disguised donation.
Generally, children are required to collate to the succession of their parents any property which they have received from those parents through donation inter vivos, unless they can prove that the donation was made expressly for the purpose of providing them an advantage over their siblings. La. C.C. art. 1228. Relative to disguised donations, La.C.C. art. 2444 provides as follows:
The sales of immovable property made by parents to their children, may be attacked by the forced heirs, as containing a donation in disguise, if the latter can prove that no price has been paid, or that the price was below one-fourth of the real value of the immovable sold, at the time of the sale.
The above article makes reference to two types of disguised donations: (1) simulations, in which no price has been paid, and (2) a sale for less than one-fourth the value of the property.
The plaintiff in an action seeking to prove that a transaction was in fact a disguised donation initially has the burden of proving that the named purchaser received property without giving consideration for it. Hogan v. McKeithen, 527 So.2d 982, 987 (La.App.2d Cir.1988). However, under the jurisprudence, a presumption arises that a disguised donation has occurred “when the evidence establishes the existence of facts and circumstances which create a highly reasonable doubt as to the reality of the putative sale.” Id. at 988. In such a case, the burden shifts to alleged buyer to prove that the sale was real — that is, that the sale was “a good faith transaction resulting in a true alienation of ownership for consideration.” Id.
In the instant case, the trial court obviously found that the alleged sale of the property was a simulation, since he failed to give Charles Fanz Jr. any credit for the $15,000 which he says that he paid his mother for the property.[2]
In an effort to prove that the alleged sale was a simulation, Ms. O’Brien testified that her mother had no bank accounts[3] and that her mother never possessed any large amounts of cash after the alleged sale of the property. Ms. O’Brien claims that her mother was discovered outside one of her sister’s *719 houses late in the day on February 21, 1980, the day that Charles Fanz Jr. claims their mother cashed the $10,650 check. Ms. O’Brien stated that her mother was incoherent at the time she was discovered, that she was not carrying a regular purse, and that she did not have any large amounts of cash in the small change purse she was carrying. When coupled with the evidence that Charles Fanz Jr. deposited the exact amounts of money into his checking account as the cheeks were written for on or near the dates the cheeks were written, this evidence is sufficient to create a presumption of simulation since it “establishes the existence of facts and circumstances which create a highly reasonable doubt as to the reality of the putative sale.” Hogan, 527 So.2d at 988.
Thus, the burden shifted to Charles Fanz Jr. to prove the reality of the sale. He argues that the transaction could not have been a feigned sale because the act of sale is in authentic form, and the record shows that he wrote checks for the agreed-upon price to his mother. He tells a very different story about February 21, 1980, claiming that he saw his mother cash the check for $10,650, then “handed his mother over” to his sister, Lois. He claims that the incident where his mother was discovered in his partner’s car happened on a different day. However, he was unable to explain what his mother might have done with the money he claims to have given her in consideration for the property.
Obviously, this is a case where the two sides presented conflicting views of the evidence. In such a case, Louisiana appellate courts are constrained from finding manifest error under the principles enunciated in Rosell v. ESCO, 549 So.2d 840 (La.1989). Because the parties presented two permissible views of the evidence, the decision of the trial court is deemed correct, when, as here, no documentary or objective evidence contradicts the testimony accepted by the trial court. Id. at 844-45. Thus, we affirm the trial court judgment finding that the transfer of the property from Mrs. Fanz to Charles Fanz Jr. was a disguised donation subject to collation.[4]

Donation omnium, bonorum

The trial judge found specifically both in his formal judgment and in his reasons for judgment that the transfer of the property from Mrs. Fanz to Charles Fanz Jr. was null as a donation omnium bonorum under the provisions of La.C.C. art. 1497, which prohibits a donor from divesting himself of all of his property by donation inter vivos without reserving enough for subsistence. It is unnecessary for us to determine whether the trial court was correct in reaching this conclusion because of our finding above that the donation was a simulation and thus subject to collation on that basis.[5] Amount of judgment
Finally, Charles Fanz argues that the trial court erred in requiring him to collate back to his mother’s succession the entire amount of the mortgage.[6] He claims that since he owns two-fifths of the property— one-fifth inherited from his father and one-fifth inherited from his mother, he should not *720 be required to return the portion of the mortgage which applied to his portion of the property. However, the general collation article, La.C.C. art. 1227, defines collation as “the supposed or real return to the mass of the succession which an heir makes of property which he received in advance of his share or otherwise, in order that such property may be divided together with the other effects of the succession.” Thus, the donee is required to return the entire amount of the property to the succession, so that the entire succession may be divided among the rightful heirs, including the donee. Therefore, we find no error in the trial court judgment.

Conclusion

Accordingly, the judgment of the trial court against defendant Charles Fanz Jr. is affirmed in all respects.

AFFIRMED.

. The plaintiffs attempted to offer at trial an affidavit purportedly signed by Mrs. Fanz on September 28, 1980, wherein Mrs. Fanz stated that she never received any monies for the alleged sale of the property. However, the trial court allowed the evidence to be presented only by proffer, saying that he would rule on the admissibility of the affidavit at a later time. However, he never made any ruling on that issue on the record, nor did he mention the document in his reasons for judgment. Since we find sufficient evidence on the record, even without consideration of the proffered affidavit, to support the trial court's finding that the alleged sale was actually a disguised donation, it is unnecessary for us to decide whether the trial court should have admitted the document.

. The plaintiffs sought to prove first that the alleged sale was a simulation, and, in the alternative that the price paid for the property, was less than one-fourth the value of the property at the time of the sale. To establish the historical value of the property, the plaintiffs offered the testimony of appraiser Clarence Galjour, who stated that the property was valued at $71,400 on January 24, 1980, when the alleged sale occurred, and that the property was valued at $83,700 on April 15, 1986, when Mrs. Fanz died. However, since we affirm the trial court's finding that the alleged sale was a total simulation, there is no need for us to consider this argument.

. The plaintiffs offered the testimony of Sylvia Roberson, vice-president and manager of operations at People’s Bank & Trust Co., to prove that Mrs. Fanz had no bank accounts. Ms. Roberts testified that she had found no records of any accounts ever owned by Stella Fortuna Fanz at her bank.

. We note that the finding that the transaction was a disguised donation is not contained in the formal judgment issued by the trial judge, although it is mentioned in the reasons for judgment. However, under the provisions of La. C.C.P. art. 2164, this court may render any judgment which is "just, legal, and proper." Therefore, we may affirm the result reached by the trial court, even if our reasoning differs from his.

. We note, however, that the plaintiffs did not cany their burden of proof on this issue under the relevant caselaw. See Holcomb v. Baker, 459 So.2d 158 (La.App.2d Cir.1984), in which the court affirmed a trial court judgment refusing to nullify an alleged donation omnium bonorum because the plaintiffs failed to present evidence that the donor's monthly social security checks were inadequate to meet his needs. In the instant case, the plaintiffs admitted that they received Mrs. Fanz's social security checks, but presented almost no evidence concerning Mrs. Fanz’s expenses. Since we would find, as the court did in Holcomb, that the plaintiffs failed to prove the transaction was a donation omnium bonorum, it is unnecessary for us to consider whether that right of action is heritable.

.Charles Fanz Jr. also attempts to argue that his sisters will receive a double recovery if this judgment is allowed to stand since the property has now been sold. However, the record is devoid of any evidence that the property has been sold, and we are constrained from considering evidence outside the record.