408 So.2d 987 (1981)
Jacquetta Benedict ELLIS, Plaintiff-Appellee,
v.
Dorris BENEDICT a/k/a Dorris Benedict Sinclair, Defendant-Appellant.
No. 14730.
Court of Appeal of Louisiana, Second Circuit.
December 7, 1981.
*988 Campbell, Campbell & Johnson by John T. Campbell, Minden, for defendant-appellant.
*989 Walker, Holstead & Smith by R. Wayne Smith, Ruston, for plaintiff-appellee, Jacquetta Benedict Ellis and intervenor-appellee, Marshal Benedict, individually and as administrator of the succession of Earl P. Benedict.
Before HALL, JASPER E. JONES, and FRED W. JONES, Jr., JJ.
HALL, Judge.
Plaintiff filed suit against her sister, the defendant, to obtain a judgment recognizing that an inter vivos donation of immovable property made by the parties' now deceased father to the defendant is subject to collation or, alternatively, reduction or, in the further alternative, is null and void as a donation omnium bonorum. Plaintiff also sought reimbursement of her pro rata share of funds received by the defendant from the rental of the property which was the subject of the donation. Marshal Benedict, brother of plaintiff and defendant, intervened individually and in his capacity as administrator of the succession of the donor, Earl P. Benedict, adopting each of the allegations contained in the petition of the plaintiff. Defendant filed an answer in the nature of a general denial praying that plaintiff's and intervenor's demands be rejected. Defendant alternatively alleged the payment of certain expenses for preservation of the property and prayed for reimbursement of the amount expended.
After trial of the matter, the district court declared the donation null and void as a donation omnium bonorum and rendered judgment against defendant in favor of the Succession of Earl P. Benedict in the sum of $3,800, representing the rental income received by the defendant from the date of the donation until the date of the trial on the merits. The trial court also rendered judgment against the succession in favor of the defendant in the sum of $8,027.55, the amount expended by defendant for maintenance of the property. Defendant appealed. We reverse.
The facts of the case are as follows. On July 1, 1966 the defendant and her husband bought a lot with improvements in Taylor, Louisiana, for a total price of $10,650.90. A cash down payment of $640 was made, with the balance, $10,010.90, secured by a mortgage on the property. Defendant's monthly mortgage note payment was $95.66. On May 28, 1973, the defendant and her husband sold to Earl P. Benedict the lot and improvements for $2,727.81, assumption of the mortgage on the property which at that time had a balance owed of $5,176, and cancellation of a mortgage from defendant and her husband to Earl P. Benedict in the sum of $2,795.
On November 16, 1973, Earl P. Benedict made an inter vivos donation of the lot and improvements to the defendant. The act of donation did not describe the gift as an extra portion over and above the forced portion which would be due the defendant. Nor was there any mention of the mortgage which had been assumed by the donor in 1973. The evidence established that the donor had lived in the house during the time he owned it and continued to live there subsequent to the donation until the time of his death in September 1974. After the donation, the defendant paid all of the mortgage payments as they became due, paid all taxes and insurance on the property and incurred other expenses necessary for maintenance of the property. From September 1976 until the time of trial, the defendant rented the house and lot to several tenants and received the rental income from it. This suit was filed January 6, 1978.
The evidence establishes that at the time of the donation, the only immovable property owned by the donor was the property which was the subject of the donation. At the time of the donation and up until the time of his death, the donor was receiving monthly social security and veterans' benefits and a small monthly pension from the Woodard-Walker Company. Based on this evidence, the trial court found that at the time of the donation, the donor had a monthly income of approximately $200 per month. The trial court determined that defendant's father donated all of his property to the defendant and did not reserve *990 enough for his subsistence in contravention of LSA-C.C. Art. 1497.[1] Therefore, the donation was declared null and void.
On appeal to this court the defendant argues that the trial court erred in finding that the donor's income was only $200 per month and erred in finding the donation null and void as being in contravention of LSA-C.C. Art. 1497. Defendant's arguments have merit. It was established at trial that Earl Benedict's income at the time of the donation was $396 per month and not $200 per month as the trial court found. The testimony of the defendant establishes that Earl Benedict received social security payments in the sum of $227 per month, veterans' benefits in the sum of $139.14 per month, and retirement pay from Woodard-Walker Company in the sum of $30.76 per month. The trial court was, therefore, clearly wrong in finding that the donor's income was only $200 per month.
The trial court also erred in finding that the donation here was a donation omnium bonorum. The trial court determined that the donor, having an income of only $200 per month, did not reserve to himself enough for his subsistence, considering that the act of donation did not make mention of the mortgage which the donor had assumed when he bought the property from the defendant several years prior to the donation. Since the donor was obligated to pay the monthly mortgage note of $96 per month, the trial court reasoned that the donor retained insufficient assets to pay for his necessities of life.
In Owen v. Owen, 325 So.2d 283 (La.App.2d Cir. 1975), this court held that an inter vivos donation by which the donors divested themselves of all of their immovable property was a donation omnium bonorum, even though the donors had a monthly income from welfare and social security. The amount of the donor's monthly income is not stated in the opinion. That decision was reversed by the supreme court on other grounds in Owen v. Owen, 336 So.2d 782 (La.1976); however, the supreme court made the following comments regarding the court of appeal's determination that the Owen donation was a donation omnium bonorum:
"In order to sustain an attack on a gift as a donation omnium bonorum, the heirs must prove conclusively that the donation divested the donor of all of his property. Whitman v. Whitman, 206 La. 1, 18 So.2d 633 (1944); Potts v. Potts, 142 La. 906, 77 So. 786 (1918); Hearsey v. Craig, 126 La. 824, 53 So. 17 (1910); Hinton v. May, 241 So.2d 583 (La.App.2d Cir. 1970). In light of the stringent requirements set forth in the aforementioned cases, we are not as certain as were the lower courts that the requirements of Article 1497 were met so as to brand I. M. Owen's disguised donations as donations omnium bonorum...."
This comment indicates that an inter vivos donation which divests the donor of all of his immovable property should not necessarily be termed a donation omnium bonorum where the donor is entitled to and is receiving a fixed, vested monthly income in the form of government and private benefits.
Several cases, though not factually on point with the instant case, refused to declare donations void where the donor gave away substantially all of his property, but had remaining some income or the ability to earn income. See: Succession of Quaglino, 232 La. 870, 95 So.2d 481 (1957); Pardue v. Turnage, 383 So.2d 804 (La.App. 1st Cir. 1980); Blossman v. Olsen, 365 So.2d 545 (La.App. 1st Cir. 1978), writ denied 365 So.2d 1374 (La.1978).
Plaintiff has the burden of proving conclusively that the donation divested the donor of all of his property and that the donor did not reserve enough for his subsistence. The evidence in this case established that the donor divested himself of all of his immovable property and retained *991 only his personal belongings, and that the donor was entitled to and did receive monthly social security and veterans' benefits plus a small monthly pension. The question then becomes, did the donor reserve enough for his subsistence?
Plaintiff did not offer any evidence as to what the donor's living expenses were. Although the donor, as the trial court noted, had assumed the obligation of paying the monthly payment on the mortgage affecting the donated property, defendant was primarily responsible for the payment and the evidence establishes that subsequent to the donation the defendant paid all of the mortgage payments as they became due. At the time of the donation in 1973, an income of approximately $400 per month was probably sufficient to supply the elderly donor's needs in the rural area where he lived. The evidence reflects that the needs of the donor were, in fact, met from his income during the several months that he lived after making the donation.
Plaintiff failed to prove that the donor did not retain sufficient income for his subsistence. Therefore, the judgment of the trial court declaring this donation to be null and void and requiring that defendant restore rental income from the time of the donation until the time of trial, with a credit for the defendant's expenses in preservation of the property, is reversed and set aside.
The donation, although not null and void, is subject to collation since the donor did not declare the gift to be an advantage or extra portion. See LSA-C.C. Art. 1227, et seq. Defendant concedes that collation is due.
Collation is made only to the succession of the donor, LSA-C.C. Art. 1242, and a demand for collation must be brought incident to a succession proceeding, and not made part of a suit to nullify a sale. Owen v. Owen, supra; Blossman v. Olsen, supra; Jackson v. Jackson, 175 So.2d 360 (La. App.2d Cir. 1965).
Although the demand for collation in this instance was not made incidental to the succession proceedings, the administrator of the succession and all heirs are parties to this suit and the issues related to collation were joined and fully tried without objection in the district court. Under the authority of LSA-C.C.P. Art. 2164 and in the interest of judicial economy and efficiency we will proceed to decide and render judgment on the issues presented in this case. The judgment ordering collation can, however, only be effectuated in the succession proceedings as a part thereof.
The trial court ruled that defendant is entitled to be reimbursed for all taxes and insurance paid on the property and further that she is entitled to receive credit for all principal and interest payments made on the mortgage note. Judgment was rendered in favor of defendant against the succession for $8,027.25 for these items and other expenses incurred by defendant. Plaintiff and intervenor did not appeal, nor answer defendant's appeal, and make no complaint about the judgment in this respect. LSA-C.C. Art. 1256 provides that the donee who collates in kind an immovable which has been given to him must be reimbursed by his co-heirs for the expenses which have improved the estate in proportion to the increase in value it has received thereby. Article 1257 provides that the co-heirs are bound to allow to the donee the necessary expenses which he has incurred for the preservation of the estate, though they may not have augmented its value. See also LSA-C.C. Arts. 1258 and 1259. In connection with the collation, defendant is entitled to be reimbursed the sum fixed by the district court.
The district court ruled that defendant must collate rental income received by her in the amount of $3,800, being all of the rent received by her after her father's death in September 1974. Judgment was rendered against defendant in favor of the succession for that amount.
Defendant contends on appeal that she must only restore rent received after demand for collation or reduction was made by the filing of this suit in January 1978, more than one year after the donor's death, *992 relying on LSA-C.C. Art. 1515. Article 1515, which appears in the section of the Code dealing with reduction of dispositions inter vivos or mortis causa, provides:
"Art. 1515. The donee restores the fruits of what exceeds the disposable portion only from the day of the donor's decease, if the demand of the reduction was made within the year; otherwise from the day of the demand."
We find no Louisiana cases which have directly addressed this issue. Clark v. Hedden, 109 La. 147, 33 So. 116 (1902) seems to have applied Article 1515 in a collation case, affirming a judgment ordering the donee to account for revenues from the donated property only from the date of judicial demand and not from the date of the donation. Succession of Weber, 110 La. 674, 34 So. 731 (1903), another collation case, held that the donee owed rent from the donated property subject to collation from the date of the donor's death, offset by taxes, insurance, and maintenance paid. See also Succession of Pierson, 339 So.2d 1337, 1351 (La.App.3d Cir. 1976), writs denied 342 So.2d 216 and 217 (La.1977), for a discussion of collation of fruits of things collated. None of the cited cases involved a situation, as in the instant case, where the demand for collation was made more than one year after the death of the donor.
Article 1515 applies to reduction of donations exceeding the disposable portion; it does not apply to collation of donations to equalize the inheritance of co-heirs. Reduction and collation are entirely separate and distinct matters, governed by separate codal rules. See Jordan v. Filmore, 167 La. 725, 120 So. 275 (1929).
Since this special rule keyed to the date of making demand is not applicable to collation, it seems only logical that the expenses incurred by the donee in preserving and maintaining the property for which the donee is entitled to reimbursement should be offset by the revenues from the property received by the donee after the date of the donor's death. Succession of Weber, supra, is authority for this decision. In this case there were no revenues received by the donee prior to the donor's death and, therefore, we need not deal with the question of whether revenues from property to be collated received prior to the donor's death must be collated or offset against expenses.
The trial court correctly determined that defendant owes the succession $3,800 for rents received after the death of the donor.
The judgment of the district court is reversed and set aside. Judgment is rendered in favor of the Succession of Earl P. Benedict against the defendant, Dorris Benedict Sinclair, ordering collation in kind of the following described property, to-wit:
Lot 34 of Unit 1 of Ada Subdivision, as per plat and map thereof on file and of record in the office of the Clerk of Court, Bienville Parish, Louisiana, together with all improvements and all rights thereunto belonging;
the collation to be effectuated in the succession proceedings in accordance with law. Judgment is further rendered recognizing defendant's entitlement to be reimbursed the sum of $8,027.55 for expenses incurred for improvement and preservation of the property, subject to a credit or offset of $3,800 for rent received by the defendant. Costs of this proceeding, including the cost of appeal, are assessed one-half to the Succession of Earl P. Benedict and one-half to defendant, Dorris Benedict Sinclair.
Reversed and rendered.
NOTES
[1] "Art. 1497. The donation inter vivos shall in no case divest the donor of all his property; he must reserve to himself enough for subsistence; if he does not do it, the donation is null for the whole."