WILLIAMS, J.
| plaintiffs, the Succession of Carl V. Conville, Oscar Kelly Conville, individually and as the representative for the aforementioned succession, and Mary Conville Roberts, individually, appeal the summary judgment rendered by the trial court dismissing their claims against Bank One, Louisiana, N.A. (“Bank One”), and Ronny Walker. For the reasons assigned below, the judgment of the trial court is hereby affirmed.
FACTS
Carl Conville was born on May 10, 1911, in Bienville Parish, Louisiana. During his life he was married twice, first to Bessie Jewel Conville with whom he had two children, Mary and Oscar, plaintiffs herein. After the parties divorced, Carl married Helen Clinton with whom he had another daughter, Twyla Conville, who died of cancer when she was approximately 12 years of age. Carl and Helen subsequently divorced. Carl never remarried.
In November 1993, Carl purchased annuity contracts 9920-3216977 and 9920-3216979 from American Enterprise Life Insurance Company in which he designated Oscar and Mary as beneficiaries. He also purchased annuity contract 9920-3216978 from American Enterprise in which he designated Mt. Zion Presbyterian Church as the beneficiary. In 1994, Carl purchased five more annuity contracts from Great Northern Insured Annuity Corporation each of which designated Oscar and Mary as the beneficiaries.
On January 29, 1996, Carl executed a will establishing the Carl V. Conville Trust, a testamentary trust, having as its income and principal beneficiary St. Jude Children’s Research Center (“StJude’s”). Walker was 12designated as the trustee and Bank One’s predecessor in interest, Premier Bank, as the alternate trustee. On January 11, 1996, Carl Conville executed a Notice of Change form requesting that the beneficiaries on his Great Northern annui *399 ty contracts be changed from Oscar and Mary to the Carl Conville Trust. On March 29, 1996, Carl Conville executed a Customer Service Request form requesting that the beneficiaries on the two American Enterprise annuity contracts previously designating Oscar and Mary as such, be changed to the Carl V. Conville Trust.
In early 1998, Carl Conville lapsed into a coma after falling and hitting his head. On April 8, 1998, Oscar sent correspondence to American Enterprise and Great Northern requesting that the beneficiary on all annuity contracts purchased by his father be changed to name himself as the sole beneficiary. Oscar cited as his authority, a durable power of attorney executed by his father on March 11, 1993, giving Oscar or Mary the powers enumerated therein. The 1993 power of attorney gives Oscar or Mary the right to “ask, demand, sue for, recover, collect and receive ... all ... annuities” for Carl’s.benefit, but the right to change the beneficiary of the death benefits on the annuity contracts is not expressly provided for therein. Both Great Northern and American Enterprise responded by indicating their inability to comply with the change of beneficiary request because the power of attorney forwarded by Oscar did'not specifically give him the authority to make such a change.
Carl died on May 26, 1998. Oscar and Mary subsequently filed suits in state district court against Great Northern’s successor in interest, General [ ..¡Electric Capital Assurance, Co., and American Enterprise for damages arising out of their alleged bad faith breach of contract in failing to change the designated beneficiaries on the annuity contracts as per Oscar’s April 1998 request. Both suits were subsequently removed to the United States District Court for the Western District of Louisiana, where the suits were consolidated. Both defendants filed interpleaders (the common-law equivalent of concursus proceedings) and deposited the following disputed funds into the registry of the court: $807,463.88 by American Enterprise and $189,031.32 by General Electric.
The Unites States District Court found that because the 1993 power of attorney did not give Oscar the right to make donations inter vivos on behalf of his father or to engage in self-dealing, the annuity companies did not err in refusing to change the beneficiary designations requested by Oscar. Accordingly, the court rendered summary judgment in favor of the defendants and ordered disbursement of the funds as follows:
1. $189,031.32 to Bank One, as successor trustee of the Carl.V. Conville Trust, representing the death benefits of the annuities purchased by Carl from Great Northern;
2. $740,142.17 to Bank One, as successor trustee of the Carl V. Conville Trust, representing the death benefits from annuity contracts 9920-3216977 and 9920-3216979 purchased by Carl from American Enterprise; and,
3. $69,993.28 to Mt. Zion Presbyterian Church, representing the death benefits from annuity contract 9920-3216978 purchased [4by Carl from American Enterprise.
On June 16, 2003, Oscar Kelly Conville (“Oscar”), individually and as succession representative of the Succession of Carl V. Conville, and Mary Conville Roberts (“Mary”), filed a suit seeking damages from Bank One and Ronny Walker. The petition alleges that Ronny Walker, while an employee of Bank One, exerted undue influence on Carl V. Conville and persuaded him to replace petitioners as the beneficiaries on several annuity policies owned *400 by him. Specifically, Walker allegedly persuaded Carl ■ Conville (“Carl”) to designate a testamentary trust benefitting St. Jude’s as the new beneficiary of the policies. The petition also 'alleges that the defendants failed to properly assist Oscar in having himself and his sister renamed as the beneficiaries on the annuity policies by neglecting to send the companies a copy of a second power of attorney executed by their father in 1974 which they allege did authorize Oscar to take such an action.
On February 11, 2004, Bank One and Walker filed an answer generally denying all the allegations of the petition with the exception of the allegation that Walker was an employee and officer of Bank One. On March 28, 2005, Bank One and Walker filed a motion for summary judgment seeking dismissal of plaintiffs’ claims against them. The motion alleged that there was no genuine issue of material fact precluding a finding that Walker did not exert any undue influence on Carl to change the beneficiaries on his annuity policies, that Walker owed the plaintiffs no contractual obligation to forward the second power of attorney, that the requisite authority was not given in the second power of attorney and that |Kany possible claims in tort being asserted by the plaintiffs were prescribed at the time the suit was filed.
In support of the motion, defendants submitted affidavits executed by Walker and Hazel Johnson, Oscar’s deposition testimony with attachments, and various pleadings from the litigation in U.S. District Court. In opposition to the motion, plaintiffs submitted the affidavit of Oscar Conville.
Walker’s affidavit asserted that between 1993 and 1999 he was employed as an investment specialist with Bank One and its predecessors in interest. In that capacity he assisted Carl in the purchase of the annuity contracts that are the subject of this litigation: He also assisted Carl in 1996 in changing the beneficiaries on those contracts from his children to the newly established trust benefitting St. Jude’s. His affidavit asserts that the decision to make the change was made by Carl without any “suggestion, recommendation or influence by Walker.” The affidavit attests that Carl told Walker that his desire to change the beneficiary was motivated by the death of his daughter from childhood leukemia. The affidavit asserts that Oscar asked his father to change the beneficiaries back in early 1998 and that Carl refused.
The affidavit also indicates that after Carl lapsed into the coma, Oscar asked Walker to assist him in having the beneficiaries changed using a power of attorney Oscar claimed to have discovered while going through his father’s belongings. Walker’s affidavit alleges that he agreed only to facilitate the exchange of any information between Oscar and the annuity | ficompanies, but did not agree to make any specific request, nor did he guarantee that any such change in beneficiary designations would occur. Lastly, the affidavit asserts that Walker resigned as trustee of the Carl V. Conville Trust on June 24, 1998, before taking any action in that capacity.
Hazel Johnson’s affidavit indicates that she was a personal friend of Carl’s for several years prior to his death and saw him on a regular basis starting in the early 1990’s. She attested that Carl told her that he had decided to leave most of his assets to St. Jude because of his daughter’s death from cancer and his desire to help other children. Carl never indicated that anyone had tried to influence him to make that decision, and at the time Carl *401 was self-supporting and able to make decisions for himself.
In his deposition testimony, Oscar admitted that he was not aware of any specific facts as to how Walker allegedly influenced Carl into changing the beneficiaries on the annuity contracts. Oscar also admitted that before Carl lapsed into a coma Oscar asked Carl to change the beneficiary designations on his policy back to Oscar and Mary and that Carl told Oscar he would not do so. Oscar also testified that he had asked Walker[1] to assist him in having the beneficiaries changed back and that Walker agreed to do so. He then alleges that Walker breached that agreement by failing to send the 1974 power of attorney to the annuity companies.
Oscar’s affidavit asserts that he sought Walker’s assistance in having himself and Mary re-designated as beneficiaries and that Walker assured him that he would take care of it. It alleges that Oscar had no knowledge on how to handle such matters and that he relied on Walker to accomplish the 17desired change. The affidavit asserts that Walker sent the wrong power of attorney to the annuity companies and that had he sent the correct power of attorney, the changes would have been made.
Among the attachments to Oscar’s deposition is a copy of the 1974 power of attorney. In addition to granting Oscar and Mary general authority to act on his behalf, the 1974 power of attorney grants them the right to “ask, demand, sue for, recover[,] collect, receive and hold and possess ... all ... annuities” for Carl’s benefit. It makes no other mention of annuities, the right to change beneficiary designations thereon and it does not expressly give Oscar or Mary the right to self-deal.
The hearing on the motion for summary judgment was held on April 14, 2005. After the hearing, the court granted summary judgment dismissing the plaintiffs’ case. A final judgment to this effect was signed on May 9, 2005. The instant appeal followed.
DISCUSSION
Plaintiffs assign as error the trial court’s failure to recognize that genuine issues of material fact existed as to: (1) Whether the 1974 power of attorney gave Oscar the authority to change the beneficiary designation on the annuity contracts and, therefore, defendants could be held liable for their failure to forward same to American Enterprise and General Electric; and, (2) Whether Walker exercised undue influence on Carl in removing Oscar and Mary as the beneficiaries in the first place.
Summary judgments are subject to de novo review on appeal. Campbell v. Hospital Service District No. 1 Caldwell Parish, 35,015 (La.App.2ds Cir.8/22/01), 798 So.2d 521. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by law; the procedure is favored and shall be construed to accomplish these ends. LSA-C.C.P. art. 966(A)(2). Summary judgment shall be rendered if the pleadings, depositions, ■ answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).

Undue Influence Claim

LSA-C.C. art. 1479 provides for the nullification of donations procured through influence impairing the volition of the donor.[1] Comment (b) to that article provides *402 some instructive discussion on the issue of undue influence. It reads in pertinent part:
This Article intentionally does not use the word “undue” to describe the influence ... but instead defines the influence as being of such a nature that it destroys the free agency of the donor.
No single definition of “undue influence” has been found acceptable in all of the relevant legal writings ... [Everyone is more or less swayed by associations with other persons, so this Article attempts to describe the kind of influence that would cause the invalidity of a gift or disposition. Physical coercion and duress clearly fall within the proscription of the previous Article. The more subtle influences, such as creating resentment toward a natural object of a testator’s bounty by false statements, may constitute the kind of influence that is |9reprobated by this Article, but will still call for evaluation by the trier of fact. Since the ways of influencing another person are infinite, the definition given in this Article is used in an attempt to place a limit on the kind of influence that is deemed offensive. Mere advice, or persuasion, or kindness and assistance, should not constitute influence that would destroy the free agency of a donor and substitute someone else’s volition for his own.
In the present case, plaintiffs failed to present any evidence that Walker influenced Carl to change the beneficiaries on the annuity contracts from Oscar and Mary to the trust benefitting St. Jude’s. The record is devoid of any evidence that Walker influenced Carl, either overtly or subtly, to give any or all of his assets to St. Jude’s. There is also no evidence to suggest that Walker created or fostered resentment by Carl towards Oscar and/or Mary such that Carl may have been swayed to remove them as his beneficiaries. Furthermore, in his deposition testimony Oscar admitted that he was not personally aware of any specific facts supporting the allegation that any such influence was exercised.
Oscar’s uncorroborated allegations that his father suffered dementia and could have been improperly influenced to change the beneficiary designation does not create a genuine issue of fact as to whether any such influence was in fact exercised. At best, this testimony might create a genuine issue of fact as to whether Carl had contractual capacity when he changed the beneficiary designation. However, while Carl’s potential lack of contractual capacity might be grounds for nullifying the change in beneficiary designation, it would not give rise to liability on the part of Walker or Bank One for influencing Carl to make the change.
Accordingly, -the trial court did- not err in concluding that summary |1 judgment was appropriate as to the plaintiffs’ claims against Walker and Bank One for unduly influencing Carl to remove them as the beneficiaries on his annuity contracts.

Failure to Forward 1974, Power of Attorney

In their second argument, plaintiffs contend Walker was negligent in failing to send a copy of the 1974 power of attorney executed by Carl to the annuity companies. Plaintiffs claim that the 1974 power of attorney gave Oscar the authority to have the beneficiary designation on the annuity contract changed and that Walker’s failure *403 to forward it prevented the companies from complying with that lawful request.
We will assume for the purpose of discussing the powers conferred by the 1974 power of attorney that Walker had an obligation to forward it to the companies. However, his alleged negligence in this respect gives rise to liability only if plaintiffs are correct in their assertion that it gave Oscar the authority to change the beneficiary designation.
Power of attorney is a common law term whose equivalent civilian term is “procuration.” Procuration is defined by LSA-C.C. art. 2987 as:
... a unilateral juridical act by which a person, the principal, confers authority on another person, the representative, to represent the principal in legal relations.
Such acts are governed by the rules governing mandate to the extent that their application is compatible with the nature of the procuration. LSA-C.C. art. 2988. Those rules allow the principal to confer on the representative general authority to do whatever is appropriate under the circumstances. LSA-C.C. art. 2994.
In However, express authority is needed to alienate, acquire, encumber, or lease the property of the principal, LSA-C.C. art. 2996, and to make inter vivos donations, LSA-C.C. art. 2997(1). Additionally, and most relevant to this case, express authority is needed to contract with one’s self on behalf of the principal. LSA-C.C. art. 2998. Specifically, a mandatary is prohibited from contracting with himself on behalf of the principal without express authority from the principal or, if in doing so, he is merely fulfilling a duty to the principal. LSA-C.C. art. 2998.
In the present case, the principals to the contract being modified are Carl and the annuity companies, not Oscar. Nevertheless, Oscar sought to name himself as the third-party beneficiary of the conditional obligation of the annuity companies to pay benefits upon Carl’s death. Such a beneficiary acquires contractual rights in that Louisiana law gives him the right to demand performance under the contract. LSA-C.C. art.1981. We consider affording one’s self such contractual rights while acting on behalf of one’s principal to be the equivalent of the conduct proscribed by LSA-C.C. art. 2998.
Neither the 1974 power of attorney nor the 1993 power of attorney executed by Carl expressly authorized Oscar or Mary to self-deal. To the contrary, both documents unequivocally appoint Oscar and Mary as having Carl’s power of attorney for “his use and benefit.” Nor do the facts support Oscar’s contention in his affidavit that in requesting the change of beneficiaries he was merely fulfilling a duty owed to Carl because Oscar was concerned about having access to funds to take care of Carl and the | i2serious medical problems he was having. Being named as the beneficiary regarding the death benefits of an annuity contract would not provide access to any funds until the annuitant dies. The argument that plaintiffs sought only to care for their father would be more persuasive if the plaintiffs had sought to obtain the cash surrender value of the policies. Instead they sought to name themselves the beneficiaries of the death benefits, a contractual obligation that only arises after the one event which would obviate the need to “take care of Carl,” ie., his death.
Accordingly, even if Walker had an obligation to send the 1974 power of attorney to the annuity companies, a conclusion we need not reach herein, we find that said power of attorney did not give Oscar the authority to name himself as the beneficiary on his father’s annuity contracts. Accordingly, the trial court did not err in concluding that no genuine issue of materi *404 al fact exists precluding summary judgment on those grounds.
CONCLUSION
For the foregoing reasons, the trial court’s grant of summary judgment in favor of Ronny Walker and Bank One, Louisiana, N.A. and dismissing the plaintiffs’ claims is hereby affirmed. Costs of this appeal are to be borne by plaintiffs.
AFFIRMED.

. LSA-C.C. art. 1479 provides:
A donation inter vivos or mortis causa shall *402 be declared null upon proof that it is the product of influence by .the donee or another person that so impaired the volition of the donor as to substitute the volition of the donee or other person for the volition of the donor.