WILLIAMS, J.
| ;The defendant, Earnest Michael Hunt, appeals a judgment ordering him to return $856,968 to the Succession of lone Hunt. The trial court found that the defendant was not authorized to pay the funds to himself and his family as the agent under a power of attorney executed by lone Hunt. For the following reasons, we amend and affirm as amended.
FACTS
On February 18, 2001, lone Hunt (“Mrs. Hunt”) was involved in an accident which left her paralyzed from the neck down and unable to speak. According to witnesses, Mrs. Hunt did not have a mental defect, but could only communicate by moving her lips, blinking her eyes and making clicking sounds with her tongue. On February 28, 2001, while she was hospitalized, Mrs. Hunt executed a power of attorney designating her son, E. Michael Hunt, as her agent with authority to act for her in conducting her affairs. The document states that because of a physical infirmity making her. unable to sign her name, Mrs. Hunt directed that her name be affixed to the power of attorney by her daughter, Ruth Barfield.
The decedent, Mrs. Hunt, died intestate on July 9, 2004. Michael Hunt (“Hunt”) filed a petition to open the Succession of lone Hunt (“the succession”) and was des *656 ignated the administrator of the estate. In April 2005, the decedent’s other children, Laverne Foster, Billy Hunt, Marilyn Franklin and Earnestine Singleton, filed a petition to remove Hunt as administrator, alleging mismanagement of the estate assets. After a trial, Hunt was removed as administrator and Laverne Foster was appointed administratrix of the decedent’s estate.
laOn behalf of the succession, the admin-istratrix filed a petition against the defendant, Michael Hunt, demanding the return of certain assets to the succession estate. The petition sought the return of $951,000, which was the amount of insurance proceeds paid in settlement of decedent’s personal injury claim. The succession also sought from defendant an accounting for the following amounts: $659,040 in donations of the decedent’s funds made by defendant to himself and members of his family; and $50,000 withdrawn from decedent’s bank account in August 2002.
At trial, the defendant testified that in 2002 or 2008 his mother had verbally given him the amount of $400,000 to $500,000, with the understanding that he would take care of her at his home. Additionally, the defendant acknowledged that he had billed his mother for expenses such as rent, electricity, water, telephone and sitting fees for himself, his wife and his daughter. In written reasons for judgment, the trial court found that the power of attorney was valid, but did not expressly allow the defendant to contract with, or donate to, himself. The court also found that defendant failed to prove Mrs. Hunt’s donative intent for the donations of money to himself and his family members. The court determined that all such donations and expenses paid to defendant and his family were invalid and that those amounts were to be returned to the succession estate. The trial court rendered judgment ordering defendant to return the amount of $856,968 to the succession. Defendant appeals the judgment.
DISCUSSION
The defendant contends the trial court erred in ordering him to return to the succession the amount of any donations and payments for decedent’s care |smade to himself, his wife, daughter and sister, Ruth Barfield. The defendant argues that such donations and expenditures were authorized by the power of attorney and the decedent’s intent to make the donations.
A procuration is a unilateral juridical act by which a person, the principal, confers authority on another person, the representative, to represent the principal in legal relations. LSA-C.C. art. 2987. The civil code uses the term procuration, rather than the common law term, power of attorney. Article 2987, Revision Comment (a). Such juridical acts are subject to the rules governing mandate to the extent that their application is compatible with the nature of the procuration. LSA-C.C. art. 2988. Those rules allow the principal to confer on the representative general authority to do whatever is appropriate under the circumstances. LSA-C.C. art. 2994; Succession of Conville v. Bank One, Louisiana, N.A., 40,506 (La.App.2d Cir.1/25/06), 920 So.2d 397.
However, express authority is required to make inter vivos donations on behalf of the principal. LSA-C.C. art. 2997. Additionally, a mandatary who represents the principal as the other contracting party may not contract with himself, or engage in self-dealing, unless he is authorized by the principal or, in so doing, he is merely fulfilling a duty to the principal. LSA-C.C. art. 2998; Succession of Conville, supra.
In the present case, Michael Hunt testified that in June 2002, his mother, lone *657 Hunt, received the settlement amount of $951,000 after falling and breaking her back. Hunt stated .that the funds were deposited in several certificates of deposit and a checking account. Hunt testified that he made a number of donations to himself and his family from these funds under the | ¿authority of the power of attorney and his mother’s wishes. He stated that at his mother’s instruction, he donated $10,000 each to himself, to his wife, Stephanie Hunt, to his daughter, Kim Hunt, and to Ruth Barfield. Hunt testified that under the power of attorney and at his mother’s request, he gave $105,000 to his daughter to buy a house and also gave donations of $105,000 and $207,000 to himself.
Additionally, Hunt stated that for the three years between his mother’s accident and her death, she was cared for in his house because she did not want to go to a nursing home. Hunt testified that during this period, he paid $170,280 to have sitters provide care for his mother 24 hours per day, seven days per week. He also paid $28,800 for “sitter training,” which involved paying a sitter to observe and assist a trained sitter perform the job duties. Hunt acknowledged that he paid $69,048 to himself and $56,000 to his wife for sitting services, asserting that the reason was to always have a sitter and a family member available to care for his mother. Hunt stated that although his daughter was not a licensed physical therapist, she was paid $41,600 to provide physical therapy for his mother. In addition, Hunt testified that each month he had charged his paralyzed mother $600 for rent, $140 for utilities and $50 for a cell phone. Hunt explained that he did not have documentation for most of the expenses because the records which had been placed in storage were destroyed by a rat infestation. Hunt testified that as the succession administrator, he had charged the decedent’s estate $8,000 for travel to and from court and $20,000 in attorney fees.
Latisha Poole testified that in April 2003, she began working as a sitter for lone Hunt in 24-hour shifts two or three times each week. Poole stated that | fiher job duties included feeding Mrs. Hunt, cleaning her feeding tube, bathing her, washing her hair, changing her undergarments every two hours and cleaning the house. Poole testified that Mrs. Hunt could not verbalize, but she could “mouth words.” Poole explained that she could determine the words Mrs. Hunt was mouthing as a result of growing up with a deaf sister and learning to read lips. Poole stated that Mrs. Hunt made a clicking noise with her tongue to get the sitter’s attention and then mouthed the words she wanted to communicate. Poole testified that she would then repeat the words that Mrs. Hunt seemed to be saying and the patient would either nod her head yes or shake her head no to indicate whether the sitter’s understanding was accurate. Poole stated that she was present on one occasion when Mrs. Hunt discussed her finances with Michael Hunt, who reviewed with his mother several documents regarding an account of approximately $100,000. Poole testified that Mrs. Hunt mouthed the words that she wanted Michael to have that money because he took good care of her. Poole stated that she was not present when Mrs. Hunt told her son to make any other donations.
The record contains the power of attorney (procuration) by which lone Hunt, the principal, designated the defendant as her agent with the authority to “donate ... any or all property, interests or rights of any kind” owned or acquired by the principal. Although the power of attorney gave defendant, as agent, the ex *658 press authority to make donations on behalf of the decedent, we agree with the trial court that the above language cannot be construed as authorizing defendant to self deal. Thus, the trial court correctly found that the power of attorney did not authorize defendant to make the donations to himself, his wife and his daughter.
|f,In his appellate brief, defendant argues alternatively that even if self dealing was not expressly authorized under the power of attorney, the testimony showed that the decedent orally expressed her intent that the money be donated to defendant and his family. The defendant also contends the donations were valid manual donations of property.
The existence of donative intent is an issue of fact. Terrell v. Terrell, 26,863 (La.App.2d Cir.5/10/95), 655 So.2d 600. The donee has the burden of proving donative intent and such proof must be strong and convincing. Terrell, supra; Montet v. Lyles, 93-1724 (La.App.lst Cir.6/24/94), 638 So.2d 727. The donation inter vivos of a corporeal movable may be made by delivery of the thing to the donee without any other formality. LSA-C.C. art. 1543. When the donor’s will to give and the donee’s actual possession of the movable property operate simultaneously, there is a sufficient delivery to constitute a valid manual donation inter vivos. Succession of Miller, 405 So.2d 812 (La.1981); Dastugue v. Fernan, 95-394 (La.App.5th Cir.10/18/95), 662 So.2d 538.
In support of his argument, defendant cites Fernandez v. Hebert, 06-1558 (La. App.1st Cir.5/4/07), 961 So.2d 404, in which the court found that the donor had validly given her nephew oral authority to act as mandatary and to make donations of stock to himself. However, the factual situation of Fernandez, supra, can be distinguished from that of the present case. In the Fernandez case, the evidence showed that the nephew’s inter vivos donations to himself were consistent with provisions of the donor’s will. In contrast, this case does not involve such corroborating evidence of the decedent’s donative 17intent. Although defendant relies on Poole’s testimony to corroborate his assertion that decedent expressed her intent that he make the donations to himself and his family, we note that Poole could testify only about one occasion when she believed decedent had indicated her wish that defendant receive $100,000.
The trial court assessed the credibility of the witnesses and determined that the testimony of Poole and the defendant regarding his mother’s oral donation of substantial amounts of money to him and his family did not convincingly demonstrate the decedent’s donative intent, given her complete dependence upon defendant for her care and the evidence that the defendant had isolated his mother from other family members. Based upon this record, we cannot say the trial court was clearly wrong in finding that the defendant failed to satisfy his burden of proving with strong and convincing evidence that the decedent possessed the requisite donative intent for the inter vivos donations made to the defendant and his family. The defendant’s argument lacks merit.
In his brief, the defendant also contends the trial court erred in determining the amount of money to be returned to the succession. After reviewing the record, we agree that the amount ordered to be returned must be amended.
The evidence shows that the decedent had received $951,000 in compensatory damages after being paralyzed in an accident. The trial testimony demonstrates that this settlement amount was the source of the donations and other payments made by defendant in this matter. In a written *659 ruling, the trial court determined that the defendant’s payments for non-family sitters and 1 «medical supplies were authorized. The defendant’s statement of expenditures, which was accepted into evidence, lists the amounts of $170,820 as payments to non-family sitters and $10,800 for medical supplies, for a total amount of $181,620 in authorized expenses. Subtracting this figure from the original amount of $951,000 results in the sum of $769,380 to be returned, rather than the amount stated in the judgment.
In addition, we note that the testimony does not support the trial court’s finding that defendant and his family received $28,800 in fees for training sitters. Defendant testified that this money was not paid to the trainers, but was paid to the sitters who were being trained on the job by observing and assisting experienced sitters. Considering the trial court’s finding that payments to non-family sitters were authorized, $28,800 must be subtracted from the revised amount of $769,380. Thus, we conclude that defendant must return the amount of $740,580 to the succession and we shall amend the judgment accordingly.
CONCLUSION
For the foregoing reasons, the trial court’s judgment is amended to reduce the amount to be returned and the defendant, Earnest Michael Hunt, is hereby ordered to return to the Succession of lone Hunt the amount of $740,580. The judgment is otherwise affirmed. Costs of this appeal are assessed to the appellant, Earnest Michael Hunt.
AMENDED AND AFFIRMED AS AMENDED.