STEWART, J.
I,The defendant, Joseph Daniel Riley (“Riley”), pursuant to the authority granted to him under a power of attorney, donated his mother’s property to himself days before her death. His half-siblings (Kimberly Pee Tatum, Roy Pee, Timothy Pee, and Raymond Pee), the plaintiffs, filed suit to annul the donation on the grounds that it divested their mother of all her property and was not authorized by the power of attorney. Following a trial, the district court rendered a judgment in favor of Riley and dismissed the plaintiffs’ demands. Plaintiffs appealed. Finding no error in the district court’s judgment, we affirm.
FACTS
On April 4, 2006, the plaintiffs sued Riley to nullify an inter vivos donation of property that belonged to their mother, Barbara McManus Forney (“Barbara”). The plaintiffs are the children of Barbara’s first marriage to Lurlie Dell Pee, and Riley is the child of her subsequent marriage to Danny Riley. The plaintiffs alleged that Riley, utilizing a general power of attorney granted to him by Barbara and acting as her agent, donated all of her property to himself leaving her without subsistence in violation of La. C.C. art. 1498. Amending their petition, the plaintiffs alleged that the power of attorney did not expressly authorize Riley to donate Barbara’s property to himself or in violation of the public policy underlying La. C.C. art. 1498.
In answer, Riley denied that the donation left Barbara without sufficient funds for her subsistence. He asserted that he acted to carry out her wishes and that the power of attorney authorized him to contract with l2himself as to the whole or any part of her property. Finally, Riley asserted that the plaintiffs lacked standing to nullify the donation.
A trial took place on February 26, 2009. Both the power of attorney and the act of donation were introduced into evidence. The power of attorney was executed by Barbara and accepted by Riley on December 5, 2004. The provisions of the power of attorney relevant to this dispute state:
*382 The acts which AGENT is authorized to do and the power granted them by this instrument is not limited to matters of administration and without in any manner, restricting or limiting the authority of .the AGENT, such authority shall include, but is not limited to the performance or doing of the following:
[[Image here]]
(2) To do the following things and perform the following acts with respect to PRINCIPAL’S interest (whether PRINCIPAL’S interest be of the whole or of part or an undivided interest) in all kinds of things or property, whether movable or immovable, personal or real, corporeal or incorporeal, tangible or intangible, wheresoever situated, and whether presently owned or hereafter acquired, under such terms, provisions and conditions and for such price or consideration or reason, usual or unusual, as are acceptable to the said AGENT or Attorney-in-Fact;
[[Image here]]
(f) To assign, sell or otherwise dispose of the same in any manner, including, without being limited thereto, making gratuitous, onerous or remunerative donations of the same;
[[Image here]]
(19) To exercise any and all of the powers herein granted to said attorney, as and when, to the extent, in the manner, for the price or other consideration, and subject to such terms and conditions, usual or unusual, as he deems conducive to PRINCIPAL’S interest;
(20) To execute and deliver all kinds of instruments to evidence the exercise by PRINCIPAL of the powers herein granted to them; and
h(21) To do and perform all and every act and thing whatsoever requisite and necessary to be done.in the premises, as fully and to all intents and purposes as PRINCIPAL might or could do if personally present.
It is specifically provided that said AGENT is hereby
authorized to contract with himself as set forth in Louisiana Code of Civil Procedure Article 2998 concerning the whole or any part of PRINCIPAL’S interest in all kinds of things or property, whether movable or immovable, personal or real, corporeal or incorporeal, tangible or intangible, wheresoever situated, and whether presently owned or hereafter acquired, under such terms, provisions and conditions and for such price or consideration or reason, usual or unusual, as are acceptable to the said AGENT or attorney-in-Fact.
Riley executed the act of donation before a notary and two witnesses on January 30, 2006. Acting as agent for Barbara, he donated to himself her immovable property, with all improvements and appurtenances thereon, located in Lincoln Parish.[1]
*383 The record indicates that the property included 32 acres along with a house. Barbara died three days later on February 2, 2006.
Riley testified that he had joint checking and savings accounts with his mother. Barbara paid her bills from the joint checking account and deposited her monthly Social Security check in the amount of $1,037 into it. |4She also received approximately $100 per year in royalties. The plaintiffs introduced bank statements for the eight months preceding Barbara’s death. Riley testified that his mother paid her bills, but he also testified that he routinely provided support to her. He stated that he paid an $800 bill owed by her at the time of her death. According to Riley, his mother had not worked since she was hospitalized for pneumonia in November 2004. He claimed her as a dependent on his tax returns and lived in a trailer on her property, while she lived in the house. At the time of trial, Riley and his wife were living in the house on the property.
Kimberley Pee Rea (“Rea”) testified for the plaintiffs. Rea testified that she was close to her mother and helped her write checks when asked to do so. In conjunction with Rea’s testimony, the plaintiffs introduced an exhibit purporting to be a list of Barbara’s bills offered to prove that the donation left her without sufficient funds for her subsistence. Rea stated that she compiled the list from her recollection and by looking at what is paid by other single, older women she knows. She admitted that the list was not based on any of Barbara’s records.
Amy Michelle Riley (“Amy”), Riley’s wife, testified that she saw Barbara daily and helped her by taking her to doctor’s appointments and wherever she needed to go. Like Rea, Amy testified that she helped Barbara write checks when asked. Amy stated that Barbara never asked her and Riley for money, but they would give her money because they wanted to do so. She recalled that they paid an $800 debt for a washer and dryer when | ¡¡Barbara died. Amy testified that she and Riley used his separate account for their household bills.
The trial court rendered written reasons for judgment in favor of Riley on July 29, 2009. The trial court found that the power of attorney expressly authorized Riley to donate Barbara’s property to any person and to contract with himself. Noting that the power of attorney contained a reference of law that was incorrect, the trial court determined the error to be typographical or inadvertent and of no effect on the language before or after the erroneously cited article. Additionally, the trial court did not find that the plaintiffs met the burden of proving that the donation was prohibited under La. C.C. art. 1498. Noting that Barbara had $900 in her bank account when she died, the court reasoned:
The net monthly income of $1,037, plus a small amount of royalty income, was probably sufficient to supply this elderly donor’s needs in the rural area where she lived. She had no house payment, no car payment and no other fixed monthly indebtedness. Money in the bank was sufficient to discharge her only debt. She apparently lived a sim- *384 pie life. Her meager financial needs were being met by her income. Although defendant occasionally gave her some cash, the amount thereof was relatively insignificant and the absence of such gift would not have caused Barbara to fall below the level of subsistence.
Following the trial court’s ruling, a final judgment was signed on June 9, 2014, almost five years later. The record does not disclose whether the five-year delay was attributable to the trial court, the parties, or both. Nevertheless, once the judgment was signed, the plaintiffs filed this appeal. They assign as error the trial court’s finding that the power of attorney authorized Riley to donate all Barbara’s property to' himself and that the donation was not a prohibited donation under La. C.C. art. 1498. The |(¡defendant filed with this court a peremptory exception of no right of action, which has been referred to the merits of the appeal.
DISCUSSION

First Assignment of Error

The plaintiffs argue that the power of attorney had no express provision allowing Riley to donate Barbara’s property to himself and that there is no evidence of Barbara’s donative intent. They argue that ambiguity is created by the reference in the power of attorney to “Louisiana Code of Civil Procedure Article 2998,” which does not exist, and they argue that the donation is contrary to a provision in the power of attorney requiring the agent to act in a manner “conducive to the principal’s interest.”
A power of attorney is a common law term, whereas our civil code uses the term procuration to designate the same contractual relationship. La. C.C. art. 2986, Revision Comments (a); In re Succession of Hunt, 47,372 (La.App.2d Cir.9/20/12), 135 So.3d 654. As defined by La. C.C. art. 2987, “[a] procuration is a unilateral juridical act by which a person, the principal, confers authority on another person, the representative, to represent the principal in legal relations.” A procuration is governed by the rules applicable to mandate to the extent that those rules are compatible with the nature of the procuration. La. C.C. art. 2988.
The rules governing mandate allow the principal to confer general authority for the mandate “to do whatever is appropriate under the circumstances.” La. C.C. art. 2994; Hunt, supra. However, some actions 17require express authorization. The authority to alienate, encumber, acquire, or lease a thing must be express. La. C.C. art. 2996. Express authorization is also required for the agent to make an inter vivos donation on behalf of the principal. La. C.C. art. 2997(1); Hunt, supra. Self-dealing also requires express authorization as provided by La. C.C. art. 2998, which states, “A mandatary who represents the principal as the other contracting party may hot contract with himself unless he is authorized by the principal, or; in making such contract, he is merely fulfilling a duty to the principal.”
Barbara signed the power of attorney before a notary and two witnesses. The power of attorney, as shown by those provisions quoted previously in this opinion, granted Riley broad and express authority to act with regard to Barbara’s property. Barbara expressly authorized Riley to assign, sell, or otherwise dispose of her property in any manner, including making gratuitous, onerous or remunerative donations. Moreover, the power of attorney expressly authorized the agent, Riley, to contract with himself concerning the whole or any part of Barbara’s interest in her property.
*385 We are not persuaded by the argument that the incorrect reference to “Louisiana Code of Civil Procedure Article 2998” creates ambiguity as to what Riley was authorized to do under the power of attorney. Each provision of a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the whole. La. C.C. art.2050; Grant v. Ouachita National Bank, 586 So.2d 647 (La.App. 2d Cir.1988). Moreover, we must construe contracts so as “to lead to logical conclusions |sand give effect to the obvious intention of the parties.” Id., at 652. Because the procuration specifically provides that the agent is authorized to contract with himself concerning the whole or any part of Barbara’s property, the only logical conclusion is that the intended reference was La. C.C. art. 2998, and the incorrect reference to the Code of Civil Procedure was merely a mistake. We find that no ambiguity exists in the express authorization allowing Riley to make donations as to the whole or - any part of Barbara’s property and to contract with himself.
As pointed out by plaintiffs, the existence of donative intent is an issue of fact. Hunt, supra; Terrell v. Terrell, 26,-863 (La.App.2d Cir.5/10/95), 655 So.2d 600. The burden is on the donee to prove dona-tive intent by strong and convincing evidence. Hunt, supra; Terrell, supra. Plaintiffs argue there is no evidence that Barbara intended to allow Riley to donate all her property to himself and that the donation was not conducive to her interests. However, the provisions in the power of attorney allowing Riley to contract with himself and granting him the authority to donate her property evidence her donative intent. Barbara conferred on Riley broad authority over her property, and the donation at issue is authorized by the power of attorney. Barbara shared a joint account with Riley and named him as her agent in the power of attorney. These facts suggest that she trusted him with her affairs and provide some further evidence of her donative intent, as expressed by the authority conferred upon Riley in the power of attorney.
^Finding no manifest error or legal error in the trial court’s judgment, we must conclude that the trial court correctly determined that the power of attorney authorized the donation at issue.

Second Assignment of Error

The plaintiffs argue that the trial court erred in deciding that the donation was not a nullity under La. C.C. art. 1498. They assert that the bank account statements and evidence of Barbara’s monthly expenses show that she was impoverished by the donation.
La. C.C. art. 1497 states, “If there is no forced heir, donations inter vivos and mor-tis causa may be made to the whole amount of the property of the donor, saving the reservation made hereafter.” There is no allegation or evidence that Barbara had any forced heir at the time of the donation. Thus, a donation inter vivos of the whole of Barbara’s property was permissible under La. C.C. art. 1497.
However, a donation inter vivos that divests a donor of his property, without the donor reserving enough for his subsistence, is null. La. C.C. art. 1498. The plaintiff seeking to nullify a donation has the burden of proving the donation divested the donor of all his property and that the donor did not reserve enough for his subsistence. Holcomb v. Holcomb, 459 So.2d 158 (La.App. 2d Cir.1984); Ellis v. Benedict, 408 So.2d 987 (La.App. 2d Cir. 1981), overruled on other grounds, Succession of Doll v. Doll, 593 So.2d 1239 (La.1992). The Ellis opinion cites a number of cases in which courts refused to nullify *386 donations where the donor gave away most of his property but still had some income or the ability to earn income. See Succession of Quaglino, 232 La. 870, 95 So.2d 481 (1957); Purdue v. Turnage, 383 So.2d 804 (La.App. 1st Cir.1980); Blossman v. Olsen, 365 So.2d 545 (La.App. 1st Cir.1978), writ denied, 365 So.2d 1374 (La.1978).
The donor in Ellis, supra, donated all his immovable property but continued to receive an income of approximately $400 per month from social security, veterans benefits, and a small pension. The plaintiffs did not offer evidence of the donor’s living expenses. Finding that $400 per month was sufficient for the elderly donor’s needs in his rural community, the appellate court reversed the trial court’s judgment nullifying the donation and held that the plaintiff failed to prove that the donor did not retain sufficient income for his subsistence.
Similarly, the donor in Holcomb, supra, divested himself of his immovable property but received monthly social security and veterans benefits totaling $477.33. There was no evidence of the donor’s living expenses or showing that he could not take care of his needs. The appellate court affirmed the trial court’s judgment that the donation was not null.
Here, the donation divested Barbara of her immovable property, including the house located on that property. However, she continued to receive her monthly Social Security benefit in the amount of $1,037. The eight months of bank statements offered into evidence showed that the debits exceeded the credits for four of the months. However, the checking account never had a negative ending balance, and the account records do not show what expenses were paid from the joint account she shared with Riley. |nThe evidence offered by the plaintiffs to show Barbara’s monthly expenses is unconvincing and was not based on Barbara’s actual expenses. The trial court found that Barbara’s income was sufficient to supply the needs of her simple, rural lifestyle. We find no manifest error in this determination. The plaintiffs did not meet the burden of proving that the donation divested Barbara of all her property without reserving enough for her subsistence. Therefore,' the trial court did not err in refusing to nullify the donation.
Because we find no error in the trial court’s judgment, we need not address the peremptory exception asserted on appeal by Riley. That exception is moot.
CONCLUSION
On this record, we are constrained to affirm the trial court’s judgment for the reasons set forth in this opinion. Costs of this appeal are assessed against the plaintiffs.
AFFIRMED.

. The act of donation includes the following property description:
Beginning at the SW corner of the NE 1/4 of said Section 5, and run thence East along the quarter-section line for a distance of 742.5 feet and to the starting point, said point being the SE corner of that property described in COB 166, PG315 of the records of the Clerk of Court of Lincoln Parish, Louisiana. From said starting point, run thence East along said quarter-section line for a distance of 577.5 feet and to the SE comer of the West 1/2 of the NE 1/4 of said Section 5; thence run North along the East line of the said Wl/p of the NE 1/4 of said Section 5, for a distance of 2, 640 fee, more or less and to the NE comer of the West 1/p of said NE 1/4 os said Section 5; thence run West along the North line of *383 said Section 5 for a distance of 577.5 feet and to the NE corner of the aforesaid tract of land described in COB 166, PG 315; thence run South along the East line of said tract as described in COB 166, PG 315 for a distance of 2,640 feet, more or less and back to the Starting Point: LESS AND EXCEPT that certain 3.0 parcel conveyed unto Billy M. Wilkinson, et ux, by act of sale recorded in COB 230, PG 314 of the records of the Clerk of Court of Lincoln Parish, Louisiana.